## IN THE UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## McALLEN DIVISION

| | | |
|---|---|---|
| ARMANDO PAREDES, DESIDERIA PAREDES, MAYRA PAREDES, CLAUDIA PAREDES, and JESSICA PAREDES, | § § § § § | Civil Action No._____ |
| Plaintiffs, | § § | |
| vs. | § § | JURY TRIAL REQUESTED |
| MONSANTO COMPANY, HERMILO CANTU, JR., and MILO, INC., | § § § § | |
| Defendants. | § § | |

## COMPLAINT

## I.  INTRODUCTION

1.1     This is a civil action for damages and declaratory relief brought by a family of

migrant and seasonal agricultural workers against two farm labor contractors and a seed corn

producer to vindicate the workers' rights under the Agricultural Worker Protection Act (AWPA),

29 U.S.C. § 1801 *et seq*., and the Fair Labor Standards Act (FLSA), 29 U.S.C. § 201 *et seq*.

Plaintiffs also assert claims for breach of contract.

1.2     Plaintiffs complain that Defendants, by their acts and omissions set forth herein,

violated Plaintiffs' rights under the AWPA, willfully violated Plaintiffs' rights under the

minimum wage provision of the FLSA, and breached their contracts with Plaintiffs, as set forth

below.

## II. JURISDICTION AND VENUE

2.1     This Court has subject matter jurisdiction based on federal question jurisdiction

pursuant to 28 U.S.C. § § 1331 and 1337.

2.2     The federal claims in this action are authorized and instituted pursuant to 29

U.S.C. § § 1854(a) and 216(b).

2.3     This Court has supplemental jurisdiction, pursuant to 28 U.S.C. § 1367, over

Plaintiffs' contract claims arising under state law because these claims are so related to the

federal claims that they form part of the same case or controversy.

2.4     This Court is empowered to grant declaratory relief pursuant to 28 U.S.C. § §

2201-2202 and Tex. Civ. Prac. & Rem. Code § § 37.001-.011.

2.5     Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) and 29 U.S.C. § §

1854(a), 216(b).

## III. PARTIES

**A.     Plaintiffs**

3.1     Plaintiffs Armando Paredes, Desideria Paredes, and their daughter Jessica Paredes

have their permanent place of residence in Hidalgo County, Texas.

3.2     Plaintiffs Mayra Paredes and Claudia Paredes have their permanent place of

residence in Cass County, Illinois.

**B.     Defendant Monsanto Company**

3.3     Defendant Monsanto Company (hereafter "Monsanto") is a Delaware corporation.

Its principal place of business is in St. Louis, Missouri.

3.4     Monsanto at all times relevant to this action has maintained continuous,

systematic, and substantial contacts with Texas by, *inter alia*, maintaining more than half a

dozen permanent business locations in Texas.

3.5     Monsanto at all times relevant to this action did business in Texas by recruiting

Texas residents for employment inside and outside Texas.

3.6     Process may be served upon Monsanto through its registered agent for service of process, Corporation Service Company d/b/a CSC-Lawyers Incorporating Service Co., at 211 E. 7th Street, Suite 620, Austin, Texas 78701, in Travis County, Texas.

**C.     Defendant Hermilo Cantu, Jr.**

3.7     Defendant Hermilo Cantu, Jr. is a resident of Benton County, Indiana.

3.8     Cantu did business in Texas in 2011 and 2012 in that he recruited Texas residents for employment inside or outside Texas.

3.9     Process may be served on Cantu at his dwelling house or usual place of abode at 207 E. Walnut Street, Ambia, Benton County, Indiana; or pursuant to Rule 4.1(a)(1), Ind. R. Trial P., at his residence, place of business, or employment; or where he may be found.

**D.     Defendant Milo, Inc.**

3.10    Defendant Milo, Inc. is an Indiana corporation having its principal place of business in Ambia, Benton County, Indiana.

3.11    At all times relevant hereto, Milo, Inc. did business in Texas by recruiting Texas residents for employment inside or outside Texas.

3.12    At all times relevant hereto, Cantu was the president and sole officer of Milo, Inc.

3.13    Process may be served on Milo, Inc. by serving its president and registered agent, Hermilo Cantu, Jr., at 306 S. 5th Street, Ambia, Benton County, Indiana.

### IV. STATEMENT OF FACTS

4.1     Plaintiffs are a family of migrant and seasonal farm workers (a husband, wife, and three daughters).  In 2011 and 2012, Armando and Desideria Cantu and their daughters Claudia and Jessica migrated north from their home in Texas for agricultural work in Indiana, where they

worked in seed corn rogueing, detasseling, and sorting.  In 2012, they were joined by their daughter Mayra, who lived in Illinois and worked seasonally in agricultural employment.

4.2     Cantu is the President of Milo, Inc., which is a registered farm labor contractor with its principal place of business in Ambia, Benton County, Indiana.  At all relevant times, Defendants Cantu and Milo, Inc. engaged in the business of furnishing crews of migrant and seasonal agricultural workers to seed corn producers and other agricultural employers to perform agricultural labor in fields and at the processing plant.

4.3     Monsanto is a seed corn company to which Defendants Cantu and Milo, Inc. furnished migrant and seasonal agricultural workers in 2011 and 2012.  Monsanto has its world headquarters in St. Louis, Missouri.  It produces hybrid seed corn, which it sells in all 50 states and many foreign countries.

4.4     Plaintiffs worked on Milo, Inc.'s crew in 2011 or 2012 and were furnished by Cantu and Milo, Inc. to perform agricultural labor for several seed corn producers, including Monsanto.

a.      In summer 2011, Armando Paredes, Desideria Paredes, and two of their daughters (Claudia and Jessica) worked in corn detasseling and related field work on Milo, Inc.'s crew.

b.      In fall 2011, Armando and Desideria Paredes were furnished by Cantu and Milo, Inc. to work in seed corn sorting and conditioning at Monsanto's plant in Remington, Indiana.

c.      In summer 2012, Armando Paredes, Desideria Paredes, and three of their daughters (Mayra, Claudia and Jessica) worked in corn detasseling and related field work on Milo, Inc.'s crew.  Some of the crew's work was for Monsanto.

d.      In fall 2012, Armando and Desideria Paredes were furnished by Cantu and Milo, Inc. to work in seed corn sorting and conditioning at Monsanto's plant in Remington, Indiana.

4.5      As described above, the work Plaintiffs performed included corn detasseling, rogueing, volunteer corn removal, and the later operation of seed corn sorting and conditioning.

4.6      Detasseling is labor-intensive work performed on corn while it is still planted in the field, in order to produce hybrid seed.  Corn is a plant that has both male and female parts, and thus will fertilize itself if pollen-bearing tassels are not removed from selected rows of corn to make "female rows."  To do this, workers must pass through the field and remove, by hand, all tassels in each designated row.  Rows can be between a half-mile and a mile long.  All the detasseling must be done within a few weeks' time while the plant is at the proper stage of development.  This allows the silks of the plants in the female rows to be fertilized by pollen from the tassels of the designated male rows, of a different corn variety.  The resulting ears of corn have kernels that are hybrid seed.

4.7      In preparation for corn detasseling, unwanted corn plants known as "rogues" and "volunteers" are removed from the field.  The work of removing them is called "rogueing" and "volunteering."

4.8      After the hybrid seed crop is harvested, it is transported to a processing facility where it undergoes sorting from about August to October and conditioning in the late fall and winter.

**A.      2011 work of four Plaintiffs for Cantu and Milo, Inc.**

4.9      In about the early summer of 2011, Cantu spoke by telephone with Armando Paredes, who was in Texas with his family.

4.10    In this conversation, Cantu offered Armando Paredes and his family members Desideria Paredes, Claudia Paredes, and Jessica Paredes ("the 2011 Plaintiffs") summer work with Milo, Inc. in seed corn detasseling and related field work in Indiana.  Cantu also offered Armando Paredes and his wife, Desideria Paredes, additional work in the fall in seed corn sorting for Monsanto.  Cantu promised the 2011 Plaintiffs would each be paid by the acre and that Plaintiffs would also each be paid on a weekly basis at $7.25 per hour worked by that Plaintiff.

4.11    By making this offer of work to the 2011 Plaintiffs, Defendants engaged in the purposeful and affirmative act of recruiting the 2011 Plaintiffs for agricultural employment.

4.12    The 2011 Plaintiffs accepted Defendants' offer of work while in Texas.

4.13    The effect of Cantu's recruitment of the 2011 Plaintiffs was to cause the 2011 Plaintiffs to accept Defendants' offer of work, and to engage in Texas in the activities of preparing themselves, their vehicle, and their house for them to migrate north for work; to purchase gas and other items for their vehicle while in Texas; and to begin traveling north through Texas to Cantu's place of business.  It was foreseeable to Defendants that their recruitment of the 2011 Plaintiffs would cause the 2011 Plaintiffs to engage in those activities in Texas.

4.14    In recruiting the 2011 Plaintiffs in Texas for 2011 agricultural employment with Defendants, Cantu acted as the agent of Monsanto and Milo, Inc. and acted within the scope of his authority.

4.15    Defendants' offer of work to the 2011 Plaintiffs, coupled with the 2011 Plaintiffs' acceptance in Texas of that offer, created a contract and a "working arrangement" between those Plaintiffs and Defendants within the meaning of AWPA, 29 U.S.C. § 1822(c).

4.16    In reliance upon Cantu's representations about the work Defendants would

provide and its terms and conditions, the 2011 Plaintiffs migrated north from Texas to Indiana for the promised work, incurring expenses for gas and other items related to the travel and seasonal relocation.

4.17    Defendants did not provide the 2011 Plaintiffs with any written information about the terms and conditions of the promised work before the 2011 Plaintiffs traveled north.

4.18    In the summer of 2011, after the 2011 Plaintiffs arrived in Indiana, Milo, Inc. and Cantu gave them written information about the detasseling work, contained in documents that will be referred to as the "2011 detasseling disclosures."

4.19    From about June 27, 2011, until summer work ended about August 7, 2011, the 2011 Plaintiffs worked on Milo, Inc.'s crew, performing volunteer corn removal, rogueing, and detasseling.

4.20    From about late August 2011 until about mid-October 2011, Plaintiffs Armando Paredes and Desideria Paredes worked in seed corn sorting for Monsanto on a crew of workers furnished to Monsanto by Cantu and Milo, Inc.

4.21    In about early October 2011, Cantu promised Armando and Desideria Paredes that, if Armando Paredes (an experienced cook) would prepare the food for an end-of-season meal for the sorting workers in October 2011, Defendants would hire both Armando and Desideria Paredes to work in seed corn conditioning at Monsanto's plant for the October to December conditioning season.

4.22    Plaintiffs Armando and Desideria Paredes accepted Cantu's offer, and Armando Paredes prepared the end-of-season meal for the sorting workers, as Cantu requested, in reliance on Cantu's promise that Defendants would hire both him and his wife for seed corn conditioning.

4.23    Cantu's promise that Defendants would hire both Armando and Desideria Paredes

for seed corn conditioning was a working arrangement that Defendants made with Armando and Desideria Paredes within the meaning of AWPA, 29 U.S.C. § 1822(c).

4.24    At all times relevant hereto, Desideria Paredes was willing and able to to perform the work in seed corn conditioning for which Defendants had offered to hire her if Armando Paredes would prepare the meal for the workers.

4.25    After Armando Paredes performed the labor and services of preparing the meal for the workers at Defendants' request, Defendants refused to hire Desideria Paredes for work in seed corn conditioning.

4.26    Defendants violated the working arrangement they made with Armando and Desideria Paredes by refusing to hire Desideria Paredes for seed corn conditioning work, without justification.

4.27    Because of the refusal of Defendants to hire her for seed corn conditioning work, Desideria Paredes was left without the wages she would have earned in October to December of 2011, if the promised work had been provided to her.

**B.    2012 work of five Plaintiffs for Monsanto, Cantu, and Milo, Inc.**

4.28    In about spring 2012, Cantu and Milo, Inc. offered Armando Paredes and his family members summer work in detasseling and related agricultural labor with seed corn companies that included Monsanto, and offered Armando Paredes and Desideria Paredes fall work in seed corn sorting with Monsanto.

4.29    In recruiting Plaintiffs for agricultural employment with Monsanto in 2012, Cantu and Milo, Inc. acted as agents of Monsanto, and acted within the scope of their authority.

4.30    In 2012, all five Plaintiffs accepted Defendants' offer of agricultural employment with Monsanto, Cantu, and Milo, Inc.

4.31    Defendants' offer to Plaintiffs of agricultural employment with Monsanto, Cantu, and Milo, Inc., coupled with Plaintiffs' acceptance of that offer, created a "working arrangement" between Plaintiffs and Defendants within the meaning of AWPA, 29 U.S.C. § 1822(c).

4.32    Defendants did not provide Plaintiffs with any written information about the terms and conditions of the promised work at the time when Defendants recruited Plaintiffs.

4.33    All Plaintiffs except Jessica Paredes began working on Milo, Inc.'s crew of field workers on or about June 17, 2012.

4.34    Jessica Paredes began working on Milo, Inc.'s crew of field workers on or about June 27, 2012.

4.35    All Plaintiffs except Desideria Paredes, who worked only the early part of the field work season, worked with Milo, Inc.'s field crew until detasseling work ended on or about July 23, 2012.

4.36    Armando Paredes and Desideria Paredes subsequently worked in seed corn sorting at Monsanto's Remington, Indiana plant from August 2012 until October 2012 on a crew furnished to Monsanto by Cantu and Milo, Inc.

4.37    After Plaintiffs began working on Milo, Inc.'s 2012 crew of field workers, Cantu and Milo, Inc. provided Plaintiffs with three separate "disclosure forms" that set forth the compensation and other terms and conditions Defendants promised to provide to Plaintiffs in 2012.

4.38    One of the "disclosure forms" contained representations about the pay and other terms and conditions of 2012 summer detasseling work for Monsanto while on Milo, Inc.'s crew (the "2012 Monsanto detasseling disclosures").

4.39    The second "disclosure form" contained representations about the pay and other terms and conditions of 2012 summer detasseling work on Milo, Inc.'s crew for another seed corn company (the "2012 Remington detasseling disclosures").

4.40    The third "disclosure form" contained representations about the pay and other terms and conditions of 2012 sorting work on Milo, Inc.'s crew in the fall for Monsanto (the "2012 Monsanto sorting disclosures").

4.41    All of the detasseling disclosures that Cantu and Milo, Inc. provided to Plaintiffs in 2011 and 2012 represented that 1) Plaintiffs would be paid for their work by the acre at a variable piece rate; and 2) payment of the piece rate for acreage would not be made in full on weekly paydays, but would be withheld until the crew had finished all of its rogueing and detasseling work for the season.

4.42    All of the detasseling disclosures that Cantu and Milo, Inc. provided to Plaintiffs in 2011 and 2012 described a system under which workers would receive only part of their pay before the end of the season:  During rogueing and detasseling, instead of paying the full amount earned per acre on every payday for the acres Plaintiffs rogued and detaseled during the week, Defendants represented that on each weekly payday they would pay Plaintiffs an advance on those earnings, calculated at the rate of $7.25 per hour for all hours worked in their weekly pay period.  These weekly advances would be subtracted at the end of the season from the lump-sum payment for all the acres rogued or detasseled by Plaintiffs.

4.43    The 2012 Monsanto detasseling disclosures that Milo, Inc. gave Plaintiffs described four different piece rates for detasseling ($55, $40, $30, and $20) and two conditions that, if met, would result in Defendants paying Plaintiffs a bonus.  The 2012 Monsanto detasseling disclosures stated workers would be paid:

a.      $55.00 per acre for the first pull of a field with closely spaced (20") rows;

b.      $40.00 per acre on the first pull of a field with more widely spaced (30") rows;

c.      $30.00 per acre on the second or third pull of a field with 20" rows;

d.      $20.00 per acre on the second or third pull of a field with 30" rows;

e.      An unspecified piece rate for rogueing and volunteer removal work;

f.      A detasseling bonus for each field that was clean of tassels after the third pull; and

g.      A rogueing bonus for each field that was clean of rogues after the first walk.

4.44    The other 2012 detasseling disclosures Cantu and Milo, Inc. provided to Plaintiffs for non-Monsanto work, as well as the 2011detasseling disclosures, provided that Cantu and Milo, Inc. would pay Plaintiffs $4.00 per acre for rogueing, $40.00 per acre for detasseling on the first pull of each field, and $20.00 per acre on the second or third pull of each field.

4.45    Defendants did not pay Plaintiffs their full piece rate earnings on Plaintiffs' weekly paydays in 2011 or in 2012.  Instead, Defendants withheld Plaintiffs' earnings to be paid only after Milo, Inc.'s crew completed its rogueing and detasseling work, and paid Plaintiffs only a partial advance on the piece rate.

4.46    All of the detasseling disclosures Defendants provided to Plaintiffs in 2011 and 2012 expressly stated that the purpose of paying workers an hourly rate of $7.25 per hour on weekly paydays was to "ensure everyone is paid the minimum wage."

4.47    The FLSA requires that "[e]very employer shall pay to each of his employees who in any workweek is engaged in commerce or in the production of goods for commerce, or is employed in an enterprise engaged in commerce or in the production of goods for commerce," at

least the minimum wage for each hour worked in that workweek.  29 U.S.C. § 206(a).

4.48    At all times relevant hereto, the minimum wage required by the FLSA was $7.25 per hour.

4.49    At all times relevant hereto, Plaintiffs were employed in commerce or in the production of goods for commerce, and in an enterprise engaged in commerce or in the production of goods for commerce, because the seed corn they produced for Defendants is sold in all 50 states and in foreign countries.

4.50    Plaintiffs worked long hours: The 2011 and 2012 detasseling disclosures provided to Plaintiffs by the respective Defendants acknowledged Plaintiffs would work from 6:00 a.m. to 4:30 p.m. (ten and a half hours) and sometimes longer, on a typical workday in the rogueing and detasseling season for Defendants in 2011 and 2012.

4.51    Plaintiffs worked seven days a week in rogueing and detasseling on Milo, Inc.'s crew in 2011 and in 2012.  They boarded an employer-provided bus at approximately 6:00 a.m. to be transported to the first field of the day.  The fields were at varying distances, typically at least half an hour from the point where they boarded the bus.  Upon information and belief, some fields were more than 75 miles from the location where Plaintiffs boarded the bus. Plaintiffs received less than half an hour for lunch.  During rogueing, Plaintiffs' crew typically finished their work in the field from about 4 p.m. to about 6 p.m., but during detasseling the work lasted longer, into the evening.

4.52    Plaintiffs were paid once a week during the 2011 and 2012 rogueing and detasseling seasons by weekly paychecks drawn on the bank account of Milo, Inc.  Plaintiffs' checks were for less than the amount necessary to compensate each Plaintiff at $7.25 per hour for every hour that s/he worked in the workweek.

4.53    In the summers of 2011 and 2012, Cantu and Milo, Inc. issued weekly pay statements to Plaintiffs that underreported the hours Plaintiffs worked.

4.54    In the summers of 2011 and 2012, the weekly paychecks that Cantu and Milo, Inc. issued to Plaintiffs only compensated Plaintiffs at $7.25 per hour for the hours reported on the pay stub, which were fewer than the hours Plaintiffs actually worked.

4.55    Some Plaintiffs complained to Cantu and one or more other managers or supervisors at Milo, Inc. that they were being paid for far fewer hours than they worked.

4.56    Cantu and Milo, Inc. were aware the weekly paychecks they issued to Plaintiffs in June and July 2012 were not sufficient to compensate Plaintiffs at $7.25 per hour for all of the hours Plaintiffs worked.

4.57    Defendants suffered or permitted Plaintiffs to work long hours in rogueing and detasseling.

4.58    Upon information and belief, Monsanto did not pay Milo, Inc. or Cantu a sufficient amount before the completion of Milo, Inc.'s contract to enable Milo, Inc. and Cantu to timely pay Plaintiffs and the other crew members at least minimum wage for all hours worked on Monsanto's crops by the crew members in June and July of 2012.

4.59    Cantu, Milo, Inc., and Monsanto were aware in June and July of 2012 that they had a legal obligation to timely pay Plaintiffs, for each workweek, not less than the $7.25 minimum wage for each hour Plaintiffs worked in that workweek.

4.60    Cantu, Milo, Inc., and Monsanto willfully failed to timely pay each of the Plaintiffs not less than minimum wage for each hour s/he worked on Milo, Inc.'s crew in detasseling, rogueing, and volunteer removal in 2012.

4.61    The pay statements Plaintiffs received with their weekly paychecks from Milo,

Inc. in the summers of 2011 and 2012 did not disclose to each Plaintiff:

a.     The number of piecework units (acres) each Plaintiff earned, for which s/he could expect to be compensated when Milo, Inc.'s contract was completed;

b.     The basis on which s/he would be paid for the acres and fields s/he completed (i.e., the number of acres completed at each variable piece rate, and any bonuses earned by efficiently producing a clean field);

c.     The total amount s/he earned in the pay period by rogueing and detasseling those acres at those rates of pay, including any earned bonus; and

d.     The amount of his or her earned piece rate withheld from his weekly pay, purportedly to be paid to him or her when the season was completed, and the purpose for which that pay was withheld from the weekly paychecks.

4.62     The weekly pay statements Milo, Inc. and Cantu gave to the 2011 and 2012 Plaintiffs for their work in rogueing and detasseling, and the weekly pay statements Milo, Inc. gave to Desideria Paredes for her seed corn sorting work in 2011 and 2012, failed to set forth Milo, Inc.'s federal employer identification number.

4.63     Armando Paredes was paid for his fall seed corn sorting work in 2011 and 2012 directly by Monsanto; Monsanto provided him pay statements that did not set forth Monsanto's name or address.

4.64     Defendants failed to comply with their promises (by Milo, Inc. and Cantu in the 2011 detasseling disclosure statements and by all Defendants in the 2012 detasseling disclosure statements) that they would respectively pay Plaintiffs each week at $7.25 per hour for the hours Plaintiffs worked in the corresponding pay period.

4.65     In 2012, Defendants failed to timely pay Plaintiffs the minimum wage for each

hour Plaintiffs worked.

4.66    In 2012, Defendants did not keep their promise to pay Plaintiffs their piece rate pay for rogueing within 10 days of Plaintiffs' completion of rogueing work.

4.67    Upon information and belief, neither Milo, Inc. nor Cantu paid Plaintiffs in full for all the acres Plaintiffs rogued in 2011. Upon information and belief, Milo, Inc., Cantu and Monsanto did not pay Plaintiffs in full for all the acres Plaintiffs rogued in 2012.

4.68    In 2012, Defendants did not keep their promise to pay Plaintiffs their piece rate pay by the acre for detasseling within 10 days of when Plaintiffs completed their detasseling work.

4.69    Upon information and belief, neither Milo, Inc. nor Cantu paid Plaintiffs in full for all the acres Plaintiffs detasseled in 2011.  Upon information and belief, Milo, Inc., Cantu, and Monsanto did not pay Plaintiffs in full for the acres Plaintiffs detasseled for them, respectively, in 2012.

4.70    The checks Cantu and Milo, Inc. gave Plaintiffs in 2011 and 2012 for their piece-rate pay for rogueing and detasseling did not state the basis on which those wages were paid: They stated the number of acres rogued or detasseled, but did not state which of the several possible piece rates were paid for the acres in question and did not disclose whether a bonus was paid on any field.

4.71    Upon information and belief, the checks Cantu and Milo, Inc. gave Plaintiffs in 2011 and 2012 for their piece-rate pay for rogueing and detasseling did not include payment in full, at the rates promised in the 2011 and 2012 detasseling disclosure statements, for all acres Plaintiffs rogued and detasseled.

4.72    From about late August 2012 to about early October 2012, Armando Paredes and

Desideria Paredes worked in seed corn sorting at Monsanto's plant in Remington, Indiana.

4.73    Armando Paredes and at least one other family member complained on several occasions between about August 2012 and about October 2012 to Cantu and to other managers and supervisors at Milo, Inc. that he and his family had not been paid correctly for all acres they rogued or detasseled in the summer of 2012.

4.74    Cantu fired Armando Paredes in October 2012, in retaliation for Armando Paredes' requests that Defendants pay him and his family members in full for their work in rogueing and detasseling.

4.75    Milo, Inc., on or after October 26, 2012, paid Armando Paredes, Mayra Paredes, and Claudia Paredes an additional $97.90 per person, accompanied by pay statements that included the notations "2012 Season Corrections" and "Unpaid Rogueing Acres."  On the same date, Milo, Inc. paid Jessica Paredes an additional $32.62, accompanied by a pay statement with the notation "Unpaid Rogueing Acres."  The statements did not itemize the pay rates for the unpaid acres or "corrections" and did not set forth Milo, Inc.'s employer tax identification number.

4.76    The additional sums Milo, Inc. paid to each of those four Plaintiffs on or after October 26, 2012, were less than what Defendants owed each of those four Plaintiffs for their summer 2012 work.

4.77    Defendants did not pay any Plaintiff the bonuses Defendants promised them in the 2012 Monsanto disclosures, although, upon information and belief, Plaintiffs performed the acts for which Defendants had promised to pay a bonus, by producing one or more fields clean of rogues after the first rogueing walk or by producing one or more fields that were clean of tassels after the third detasseling pull.

4.78    Milo, Inc. and Cantu did not comply with their obligations in 2011 to provide field sanitation and potable drinking water in the fields where Plaintiffs worked rogueing and detasseling corn and removing volunteer plants.  Nor did Milo, Inc., Cantu or Monsanto comply with their obligations in 2012 to provide the same.

4.79    On each day Plaintiffs worked in rogueing, detasseling, or removing volunteer plants for any of the Defendants in 2011 and 2012, Plaintiffs worked on a crew of more than 11 workers in a field, performing hand labor.

4.80    In 2011 and 2012, respectively, Defendants did not consistently make portable toilets, hand washing facilities with potable water, and cool potable drinking water in sufficient quantities for the workers, available within a quarter-mile walk of where Plaintiffs and other crew members were rogueing, volunteering, and detasseling corn.  The sanitation facilities were too few and far away to ensure availability within a quarter-mile as required by 29 C.F.R. § 1928.110.

4.81    In 2011 and 2012, respectively, what field toilets Defendants did provide were not maintained in clean and sanitary condition as required by 29 C.F.R. § 1928.110.

4.82    In 2011 and 2012, respectively, Defendants did not consistently provide cool potable water at the work sites where Plaintiffs and other crew members rogued, volunteered, and detasseled corn, in sufficient amounts to meet the needs of all the workers on the job and did not consistently keep the water and its containers clean as required by 29 C.F.R. § 1928.110.

4.83    Cantu, Milo, Inc., and Monsanto were each "agricultural employer[s]" within the meaning of 29 C.F.R. § 1928.110 on each day during the time period covered by this action when Plaintiffs rogued, volunteered, or detasseled any corn for that Defendant.

4.84    The working arrangement between Defendants and Plaintiffs in 2011 and 2012

included the promises Cantu made at recruitment, the terms of the written disclosures that Defendants provided to Plaintiffs, and a requirement that Defendants comply with applicable federal and state labor protection standards, including health and safety standards in the workplace.

4.85    Upon information and belief, Cantu and Milo, Inc. in 2011 did not make, keep, and preserve complete and accurate records for each Plaintiff of (a) the basis on which wages were paid; (b) the number of piecework units earned; (c) the number of hours worked; (d) the total pay period earnings; (e) the specific sums withheld and the purpose of each sum withheld; and (f) the net pay.

4.86    Upon information and belief, Cantu, Milo, Inc., and Monsanto in 2012 did not make, keep, and preserve complete and accurate records for each Plaintiff of (a) the basis on which wages were paid; (b) the number of piecework units earned; (c) the number of hours worked; (d) the total pay period earnings; (e) the specific sums withheld and the purpose of each sum withheld; and (f) the net pay.

4.87    Upon information and belief, Cantu and Milo, Inc. in 2012 did not provide Monsanto with copies of accurate payroll records including all hours worked by Plaintiffs in rogueing and detasseling.

4.88    Upon information and belief, Cantu and Milo, Inc. in 2011 and 2012 did not provide each agricultural employer to whom he furnished any Plaintiff, including to Monsanto, copies of accurate payroll records including all hours worked by each Plaintiff.

4.89    Cantu and Milo, Inc. used buses to transport Plaintiffs from a central pick-up location to the fields on each day in the summers of 2011 and 2012 when Plaintiffs rogued or detasseled corn as members of a crew of workers that Milo, Inc. provided to one or more

agricultural employers.

4.90    Monsanto caused buses to be used to transport the Plaintiffs from a central pick-up location to the fields on each day in the summer of 2012 when Plaintiffs rogued and detasseled corn for Monsanto.

4.91    On some days of Plaintiffs' agricultural employment, Defendants caused buses to be used to transport Plaintiffs on trips that, upon information and belief, were more than 75 miles in length, with equipment stowed in the aisles in a manner that did not allow unobstructed passage to all exits by all passengers.

4.92    At all times relevant hereto, Armando Paredes, Desideria Paredes, Claudia Paredes, and Jessica Paredes were "migrant agricultural workers" within the meaning of AWPA, 29 U.S.C. § 1802(8).

4.93    At all times relevant hereto, Mayra Paredes was a "seasonal agricultural worker" within the meaning of AWPA, 29 U.S.C. § 1802(10).

4.94    At all times relevant hereto, Milo, Inc. and its President, Cantu, were "farm labor contractors" within the meaning of AWPA, 29 U.S.C. § 1802(7).

4.95    At all times relevant hereto, Monsanto was an "agricultural employer" within the meaning of AWPA, 29 U.S.C. § 1802(2).

4.96    Cantu "employed" each Plaintiff within the meaning of FLSA, 29 U.S.C. § 203(g), and within the meaning of AWPA, 29 U.S.C. § 1802(7), in each work week in 2011 and 2012 when that Plaintiff worked for Cantu.

4.97    Milo, Inc. "employed" each Plaintiff within the meaning of FLSA, 29 U.S.C. § 203(g), and within the meaning of AWPA, 29 U.S.C. § 1802(7), in each work week in 2011 and 2012 when that Plaintiff worked for Milo, Inc.

4.98     Monsanto "employed" each Plaintiff within the meaning of FLSA, 29 U.S.C. §
203(g), and within the meaning of AWPA, 29 U.S.C. § 1802(7), in each work week in 2011 and
2012 when that Plaintiff performed any work on Monsanto's seed corn, either in the field or after
it was harvested.

4.99     Monsanto, Cantu, and Milo, Inc. each personally or by his or its agent(s) recruited
the 2011 Plaintiffs for agricultural employment.

4.100    Monsanto, Cantu, and Milo, Inc. each personally or by his or its agent(s)
recruited Plaintiffs for agricultural employment in 2012.

4.101    At all times relevant hereto, Cantu acted as the agent of Milo, Inc.

4.102    In 2011, Monsanto authorized Cantu and Milo, Inc. to recruit, hire, employ,
furnish, and transport migrant and seasonal workers for agricultural employment in connection
with the production of seed corn.

4.103    In 2012, Monsanto authorized Cantu and Milo, Inc. to recruit, hire, employ,
furnish, and transport migrant and seasonal workers for agricultural employment in connection
with the production of seed corn.

4.104    In recruiting, hiring, employing, furnishing, and transporting Plaintiffs for
agricultural employment in connection with the production of seed corn for Monsanto in 2011
and 2012, Cantu and Milo, Inc. acted as agents of Monsanto and acted within the scope of their
authority.

4.105    At all times relevant hereto, each Plaintiff was ready to, and did in fact, comply
with the terms of the working arrangement and contract between himself or herself and
Defendants.

4.106    As a consequence of the acts and omissions discussed above, each Plaintiff

suffered injury.

4.107   All conditions precedent to this action were satisfied.

## V.   FIRST CAUSE OF ACTION: AGRICULTURAL WORKER PROTECTION ACT

5.1   Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

5.2   Plaintiffs bring this cause of action against the following Defendants for the following years: Cantu and Milo, Inc. (2011) and Monsanto, Cantu, and Milo, Inc. (2012).

5.3   Milo, Inc., a farm labor contractor, is responsible for violations of the AWPA by Cantu, its employee, pursuant to 29 U.S.C. § 1811(b).

5.4   The AWPA's regulations require farm labor contractors and agricultural employers to pay the wages owed to migrant and seasonal agricultural workers not less often than semimonthly.  29 C.F.R. § 500.81.

5.5    Cantu, Milo, Inc., and Monsanto each violated Plaintiffs' rights under the AWPA in 2012 by intentionally:

a.   Failing to pay all wages owed to each Plaintiff for his or her work when due, not less often than semimonthly, in violation of 29 U.S.C. § § 1822(a) and 1832(a), and 29 C.F.R. § 500.81;

b.   Providing Plaintiffs with written disclosures that did not accurately, intelligibly, and with particularity disclose the wage rates to be paid, in violation of 29 U.S.C. § 1821(a);

c.   Failing to disclose in writing to each Plaintiff, for each pay period, the number of piecework units earned in the pay period, the basis on which wages to be paid for piecework units were calculated, the true number of hours worked, all earned sums

withheld from pay and the purpose of each, and the employer's name, address, and employer identification number assigned by the Internal Revenue Service, in violation of 29 U.S.C. § § 1821(d)(2) and 1831(c)(2), and 29 C.F.R. § 500.80(d); and

d.    Violating their working arrangement with Plaintiffs, without justification, by:

     i.    Failing to pay all acreage pay for rogueing within 10 days after rogueing was completed;

     ii.    Failing to pay all acreage pay for detasseling within 10 days after detasseling was completed;

     iii.    Failing to pay $7.25 per hour each week to each Plaintiff for each hour s/he worked in the corresponding pay period as promised in the detasseling disclosures; and

     iv.    Failing to provide toilet facilities, hand washing facilities with potable water, and cool potable drinking water in sufficient quantities, within a quarter-mile walk of Plaintiffs' place of work in the field;

in violation of 29 U.S.C. § § 1822(c) and 1832(c);

e.    Failing to make, keep, and preserve for three years, payroll records setting forth: (i) the basis on which wages were paid; (ii) the number of piecework units earned; (iii) the number of hours worked; (iv) the total pay period earnings; (v) the specific sums withheld and the purpose of each sum withheld; and (vi) the net pay, in violation of 29 U.S.C. § § 1821(d)(1) and 1832(c)(1); and

f.    Causing buses to be used to transport Plaintiffs in 2012 on trips of more than 75 miles with property stowed on the buses in a manner that did not allow unobstructed passage to all exits by all passengers, in violation of 29 U.S.C. § 1841, and 29 C.F.R. § §

500.102(c) and 500.105(b)(2)(vii)(D).

5.6     Cantu and Milo, Inc. also violated Plaintiffs' rights under the AWPA in 2012 by:

a.      Knowingly providing Plaintiffs with pay statements that contained false information regarding the number of hours worked by each Plaintiff, in violation of 29 U.S.C. § § 1821(f) and 1831(e); and

b.      Failing to provide Monsanto with true and correct copies of all payroll records regarding Plaintiffs, including the basis on which wages were paid, number of hours worked, piecework units earned, total earnings, each sum withheld and the purpose for which it was withheld, and net pay, in violation of 29 U.S.C. § § 1821(e) and 1831(d).

5.7     Cantu and Milo, Inc. also violated Armando Paredes' rights under the AWPA in 2012 by:

a.      Firing him without justification in October 2012, a breach of the working arrangement between Cantu and Milo, Inc. and him, in violation of 29 U.S.C. §1822(c); and

b.      Firing him in October 2012 because he had, with just cause, exercised his rights under the AWPA by asking Cantu and Milo, Inc. to pay him and his family members in full for the acres they rogued and detasseled, which was a termination from employment in violation of 29 U.S.C. § 1855.

5.8     Cantu and Milo, Inc. violated the 2011 Plaintiffs' rights under the AWPA by:

a.      Failing to pay their wages in full, when due, not less often than semimonthly, in violation of 29 U.S.C. § 1822(a) and 29 C.F.R. § 500.81;

b.      Providing them written disclosures that did not accurately, intelligibly, and with particularity disclose the wage rates to be paid, in violation of 29 U.S.C. § 1821(a);

c.      Failing to provide them with written disclosures of the terms and conditions of employment at the time of recruitment, in violation of 29 U.S.C. § 1821(a);

d.      Failing to disclose in writing to each 2011 Plaintiff, for each pay period, the number of piecework units earned in the pay period, the basis on which wages to be paid for piecework units were calculated, the true number of hours worked, all earned sums withheld from pay and the purpose of each, and the employer's name, address, and employer identification number assigned by the Internal Revenue Service, in violation of 29 U.S.C. § 1821(d)(2) and 29 C.F.R. § 500.80(d);

e.      Violating their working arrangement with the 2011 Plaintiffs, without justification, by:

   i.      Failing to pay $7.25 per hour each week to each 2011 Plaintiff for each hour s/he worked in the corresponding pay period as promised in the detasseling disclosures;

   ii.      Failing to provide toilet facilities, hand washing facilities with potable water, and cool potable drinking water in sufficient quantities, within a quarter-mile walk of 2011 Plaintiffs' place of work in the field, and

   iii.      Failing without justification to hire and employ Desideria Paredes for 2011 work in seed corn conditioning at Monsanto's plant that Defendant Cantu had promised to her,

in violation of 29 U.S.C. § 1822(c);

f.      Failing to make, keep, and preserve for three years, payroll records setting forth: (i) the basis on which wages were paid; (ii) the number of piecework units earned; (iii)

the number of hours worked; (iv) the total pay period earnings; (v) the specific sums withheld and the purpose of each sum withheld; and (vii) the net pay, in violation of 29 U.S.C. § 1821(d) (1);

g.      Knowingly providing the 2011 Plaintiffs with pay statements that contained false information regarding the number of hours worked by each 2011 Plaintiff, in violation of 29 U.S.C. § 1821(f);

h.      Failing to provide each agricultural employer, to whom Cantu and Milo, Inc. furnished the 2011 Plaintiffs for agricultural employment, with true and correct copies of all payroll records regarding the 2011 Plaintiffs, including the basis on which wages were paid, number of hours worked, piecework units earned, total earnings, each sum withheld and the purpose for which it was withheld, and net pay, in violation of 29 U.S.C. § 1821(e); and

i.      Causing buses to be used to transport the 2011 Plaintiffs on trips of more than 75 miles with property stowed on the buses in a manner that did not allow unobstructed passage to all exits by all passengers, in violation of 29 U.S.C. § 1841, and 29 C.F.R. § § 500.102(c) and 500.105(b)(2)(vii)(D).

## VI.      SECOND CAUSE OF ACTION: FAIR LABOR STANDARDS ACT

6.1      Plaintiffs re-allege and incorporate by reference each of the foregoing paragraphs of this Complaint as if fully set forth herein.

6.2      Plaintiffs bring this cause of action against the following Defendants for the following years:  Cantu and Milo, Inc. (2011) and Monsanto, Cantu, and Milo, Inc. (2012).

6.3      Defendant Cantu, Milo, Inc., and Monsanto each violated the rights of each Plaintiff under the FLSA in 2012 by failing to pay each Plaintiff at least the $7.25 per hour

Federal minimum wage, in violation of 29 U.S.C. § 206.

6.4     Defendants' failure to pay Plaintiffs at least the minimum wage for each hour worked by each Plaintiff in 2012 was willful.

6.5     Plaintiffs are entitled to recover against Defendants the amount of their unpaid minimum wages from 2012, plus an additional equal amount as liquidated damages, and their attorneys' fees and costs pursuant to 29 U.S.C. § 216.

## VII.    THIRD CAUSE OF ACTION:  BREACH OF CONTRACT

7.1     Plaintiffs reincorporate and reallege each of the foregoing paragraphs of this Complaint as if fully set forth herein.

7.2     Plaintiffs bring this cause of action against the following Defendants for the following years: Cantu and Milo, Inc. (2011) and Monsanto, Cantu, and Milo, Inc. (2012).

7.3     In the summer of 2011, Milo, Inc. and Cantu offered to pay each 2011 Plaintiff who accepted their offer of work in detasseling and rogueing at the rate of $4.00 per acre for rogueing and up to $80.00 for detasseling, with payment to be made after Milo, Inc.'s crew finished rogueing or detasseling all acres assigned to them.  Cantu and Milo, Inc. also offered to pay each 2011 Plaintiff a weekly advance on those wages, in the amount of $7.25 per hour for each hour that Plaintiff worked in the weekly pay period.

7.4     The 2011 Plaintiffs each accepted the offer of Cantu, Milo, Inc., and Monsanto and provided labor and services to Defendants in 2011 in reliance on this offer, creating a valid and enforceable contract between Defendants and each Plaintiff.

7.5     Milo, Inc. and Cantu materially breached their contracts with each 2011 Plaintiff by failing to pay each 2011 Plaintiff $7.25 per hour on each payday for every hour s/he worked

in the weekly pay period and by failing to pay each 2011 Plaintiff for all of the acreage s/he detasseled at the full promised amount.

7.6     In 2012, Monsanto, Milo, Inc., and Cantu, in person or by agent(s), offered to pay each Plaintiff up to $115 per acre for detasseling (depending on the distance between rows and the number of passes through the field), plus an earned bonus for each field that was clean of tassels after the third pull, and to pay it within 10 days of the crew's completion of their rogueing and detasseling work, if Plaintiffs would work on Milo, Inc.'s crew as detasselers for Monsanto.

7.7     Each Plaintiff accepted Defendants' offer of 2012 detasseling work at Monsanto and provided labor and services to Defendants in reliance on Defendants' offer, creating a valid and enforceable contract between Defendants and each Plaintiff.

7.8     Monsanto, Milo, Inc., and Cantu materially breached their contracts with each Plaintiff in 2012, by failing to pay each Plaintiff for his or her 2012 detasseling work at the promised pay rates, by the promised dates.

7.9     Each Plaintiff suffered harm, including lost wages and, in some cases, expenses incurred, as a natural, probable, and foreseeable consequence of Defendants' above-described material breaches of their contracts with Plaintiffs.

7.10     Defendants are therefore liable to Plaintiffs for actual, incidental, and consequential damages of each breach described herein, and costs under Tex. Civ. Prac. & Rem. Code § 38.001.

## VII.     PRAYER FOR RELIEF

8.1     WHEREFORE, Plaintiffs respectfully request that this Court grant them the

following relief:

a.     Enter a declaratory judgment that each Defendant violated

Plaintiffs' rights under the AWPA as set forth in the preceding paragraphs;

b.     Award each Plaintiff statutory damages as provided by 29 U.S.C. § 1854 or, in the

alternative, actual damages for Defendants' violations of the AWPA,

whichever is greater;

c.     Enter a declaratory judgment that each Defendant breached his contract with each

Plaintiff;

d.     Award each Plaintiff his or her actual, incidental, and consequential damages

resulting from Defendants' breach of contract;

e.     Enter a declaratory judgment that each Defendant willfully violated

Plaintiffs' rights under the FLSA, as set forth in the preceding

paragraphs;

f.     Award Plaintiffs their unpaid minimum wages, plus an equal amount

as liquidated damages, for Defendants' violations of the FLSA, pursuant to 29

U.S.C. § 216;

g.     Award Plaintiffs their reasonable attorneys' fees, pursuant to 29 U.S.C. §

216(b), and costs of court;

h.     Award Plaintiffs their reasonable attorneys' fees pursuant to § 38.001, Tex. Civ.

Prac. & Rem. Code;

i.     Award Plaintiffs pre-judgment and post-judgment interest, as allowed by

law; and

j.      Award Plaintiffs all other relief to which they may justly be entitled.


                              Respectfully submitted,

                              **_/s/ Daniela Dwyer_____**
                              Daniela Dwyer
                              Texas Bar No. 24040842
                              S. Dist. No. 1340753
                              TEXAS RIOGRANDE LEGAL AID,
                              INC.
                              300 S. Texas Blvd.
                              Weslaco, TX 78596
                              Telephone: (956) 447-4800
                              Fax: (956) 968-8823
                              ATTORNEY IN CHARGE FOR
                              PLAINTIFFS